Nash, J.
 

 The equity of the complainants’ bill is, that a controversy existed in the- County-Court
 
 of Rutherford,
 
 as to the validity of the last will and testament of Gabriel Washburn, 'deceased, and, during its pendency, a compromise was entered into between the parties for its final adjustment — that these defendants were the propounders of the will, and
 
 the
 
 plaintiffs, or some of them, the caveators — and that the compromise was entered into in behalf of the whole of those who were interested in setting aside the paper writing — that by the compromise it was agreed the property should remain with the widow, Priscilla, during her life, and that at her death the land should belong to the defendants, as devised, and the negroes to the other children, and that let-
 
 *165
 
 tors of administration should be taken out by the widow on the estate of the said Gabriel — that, in viola!ion of this compromise, the defendants, upon the death of the widow, immediately took possession of the negroes and divided them between themselves, as they were bequeathed to them in the alleged will. The object of the bill is to enforce this compromise of family disputes, and prevent the defendants, in the •mean time, from removing the negroes beyond the jurisdiction of the court. On the hearing of a motion to dissolve an injunction, the defendant is the actor, and, although the contents of his answer are generally to be taken as true, it must fully meet the plaintiff’s equity. There must be no evasion — no disposition shown to pass over the material allegations of the bill- — and, if a reasonable doubt exists in the mind of the court, whether the equity of the bill is sufficiently answered, the injunction will not be dissolved, but continued to the hearing.
 
 McNamara
 
 v Irwin, 2 Dev. & Bat. Eq. Rep. 19.
 
 Little
 
 v
 
 Marsh, 2
 
 Ired. Eq. Rep. 18.
 
 Moore
 
 v
 
 Hylton and others,
 
 1st Dev. Eq. 435.
 
 James
 
 v
 
 Lemly, 2
 
 Ired. Eq. 278.
 
 Sherrill
 
 v
 
 Harrell,
 
 1 Ired. 194.
 

 ■ In this case the defendants join in their answer. Josiah admits he signed the compromise, but avoids it by alleging that Harrell signed for himself and wife alone and- not for the other parties, who therefore were not bound, and that he signed, under the express understanding, that it was not to be binding on him, unless his brother Abraham agreed to it; that he was not present, and, as soon as he heard of it, disagreed to it, and refused to become a party ; yet they both admit, that letters of administration upon the estate of their father Gabriel were issued to Priscilla, the widow, and they avoid saying, whether they signed the administration bond as her sureties, though the fact is averred in the bill, and their answer required.
 

 In this stage of the proceedings, we must assume, that the defendants did become their mother’s sureties, and that Abraham, therefore, did concur in the agreement for .a compromise — neither of them gives any account of the suit insti
 
 *166
 
 tuted to prove the will or to try the issues after the time of the alleged compromise, and, after the death of their mother in the year 1839, eleven years after she had become administhey again bring forward the will and offer it for probate. We cannot say we have not a reasonable doubt whether the equity of the bill is answered. When money is alone the demand, the common law security is the person of the debtor, nor will equity go farther; but when property is in contest, chancery will in special cases exercise its preservative power and look further than to the personal liability of the defendant. It will, in cases where the circumstances authorise its interference, and where its aid is invoked, secure the property itself, during the existence
 
 of the
 
 controversy. Thus in cases of waste, the common law gave the writ of waste, and to aid and secure to the plaintiff the full benefit of the process, the writ of estrepement to stay the further injuring of the property, during the contest, was awarded. The writ of rvaste, both in England and in this country, from its peculiar features, has become obsolete, and has been succeeded by the more convenient and less cumbrous action on the case in the nature of waste. With the old writ fell that of the estrepement, and the power of the Court of Equity was called in to supply its place, in aid of the more modern action on the case, and in analogy to the writ of estrepement. Equity, when it interferes, will secure the property in the contest during the litigation. With us, we have a species of property peculiarly requiring the exercise of this power in a Court of Chancery. Without it, the fruits of a judgment at law would often prove illusory. Thus Judge Henderson, in the case of
 
 Edwards
 
 v
 
 Massey,
 
 in 1st Hawks 364, says, “ the same principle which in-' duced the chancery in England to interfere in the case of waste applies in all its force in cases of property in slaves ; for the nature of the property is such, that possession may be lost by the most vigilant owner, without there being an actual taking, or the commission of a trespass.” In cases, then, of this species of property, in which it is proper for a Court
 
 *167
 
 of Equity to interfere, having taken possession of the property, the court, in analogy to the principle and object of the estrepement, retains that possession, until the cause is finally disposed of.
 

 It is the opinion of the court, that the interlocutory decree in this case, removing the sequestration from the negroes of Abraham Washburn, was erroneous, and that the sequestration ought
 
 to
 
 have been retained until the final hearing. The court is further of opinion, that there was no error in the interlocutory decree, retaining the sequestration on the negroes of Josiah Washburn. There must be judgment against the' defendants for both appeals.
 

 Per Curiam, Certificate ordered accordingly.